### INTERNATIONAL STATE BANK, Respondent,

v.

### Richard GAMER and Linda Gamer, Individually and d. b. a. International Market Place, Appellants.

#### No. 48846.

Supreme Court of Minnesota.

July 13, 1979.

Steven A. Nelson, International Falls, Brady & Smith and Dennis L. Smith, St. Paul, for appellants.

Shermoen & Shermoen and Jerome W. Shermoen, International Falls, for respondent.

Heard before YETKA, SCOTT, and WAHL, JJ., and considered and decided by the court en banc.

WAHL, Justice.

This appeal from an order of the Koochiching County District Court denying defendant's motion for an order quashing a writ of attachment challenges the constitutionality of the Minnesota attachment statute, Minn.St. ch. 570. We affirm.

Defendants Richard and Linda Gamer own and operate a business called "The International Market Place" in International Falls, Minnesota. On September 2, 1977, Richard Gamer borrowed $7,000 from plaintiff, International State Bank, executing a 120-day note secured by the inventory, furniture, fixtures and accounts receivable of the business. On September 19, 1977, an additional $1,000 was borrowed with a 1975 Chevrolet cargo van and a 1971 Kawasaki motorcycle securing the debt. Defendants defaulted on both loans. Richard Gamer stated, however, that he had understood that the notes could be extended upon request if he was unable to make the payments. The bank officer who allegedly made this oral representation left the bank, and the bank refused to extend the notes. Sometime after the default, defendant Richard Gamer and Steven Shermoen, plaintiff's attorney, had a discussion in

which defendant stated that he had conflicts with the bank regarding repayment of the loans and that, if necessary, he would sell the collateral for $50 to spite the bank. In January of 1978, defendant told a bank officer that he could not repay the loans and that he planned to sell his residence in International Falls and move to Moorhead.

On March 2, 1978, upon plaintiff's request and in compliance with the requirements of Minn.St. ch. 570, the district court ordered issuance of a writ of attachment against the non-exempt property of defendants. Acting pursuant to the writ, the Koochiching County Sheriff locked the doors to the business and denied defendants access. On March 21, defendants moved for an order of the district court quashing the writ. Prior to the hearing, defendants notified the Attorney General of the State of Minnesota that the constitutionality of Minn.St. ch. 570 was in question. The matter was heard on March 23, 1978, pursuant to an order to show cause served on plaintiff, and defendants' motion was denied.

Defendants' challenge to the Minnesota attachment statute on constitutional grounds necessarily draws our attention to the pronouncements of the United States Supreme Court on this issue. Since *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), this court and other courts have carefully scrutinized prehearing seizure statutes for compliance with the due process standards set forth in *Sniadach* and its progeny.[1] In applying these standards to the Minnesota attachment statute, we find no facial constitutional infirmity.

The line of United States Supreme Court decisions commencing with *Sniadach, supra,* provides a framework for our analysis. In *Sniadach,* the Supreme Court held that a Wisconsin prejudgment garnishment procedure which resulted in garnishment of a debtor's wages without notice and prior hearing, violated fundamental principles of due process. *Sniadach* was followed by *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), which struck down the Florida and Pennsylvania prejudgment replevin statutes as constitutionally infirm. Neither statute provided notice of a hearing prior to seizure. Confirming the *Sniadach* rule, *Fuentes* required preseizure notice and hearing, except for extraordinary situations. Such situations arise where the seizure has been directly necessary to secure an important governmental interest or where very prompt action is needed in face of an immediate danger that a debtor will destroy or conceal the subject goods; but the prejudgment seizure statute must be narrowly drawn and applied only after a government official determines it to be necessary and justified. 407 U.S. 91–93, 92 S.Ct. 1999–2001, 32 L.Ed.2d 576–77.

*Mitchell v. W. T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974), followed. In *Mitchell,* the Supreme Court upheld a Louisiana statute allowing the prejudgment sequestration of personal property subject to a vendor's lien. *Sniadach* and *Fuentes* were distinguished on the facts, the court emphasizing the considerably different procedural treatment provided by the Louisiana statute. 416 U.S. 614–17, 94 S.Ct. 1903–04, 40 L.Ed.2d 417–419. The *Mitchell* court held that the statute met due process standards, noting certain procedural safeguards which have become the touch-

---

1. On the impetus of *Sniadach* and subsequent prehearing seizure decisions, numerous state laws have been challenged. Statutes of several states have been held unconstitutional. See, e. g., *Guzman v. Western State Bank,* 516 F.2d 125 (8 Cir. 1975) (North Dakota statute); *Terranova v. Avco Financial Services of Barre, Inc.,* 396 F.Supp. 1402 (D.Vermont 1975); *Randone v. Appellate Dep't of S.Ct. of Sacramento,* 5 Cal.3d 536, 96 Cal.Rptr. 709, 488 P.2d 13 (1971), cert. denied sub-nom. *Northern California Collection Service Inc. of Sacramento v.* *Randone,* 407 U.S. 924, 92 S.Ct. 2452, 32 L.Ed.2d 811 (1972); *Unique Caterers, Inc. v. Rudy's Farm Co.,* 338 So.2d 1067 (Fla.1976); *Hillhouse v. City of Kansas City,* 221 Kan. 369, 559 P.2d 1148 (1977); *Williams v. Matovich,* 560 P.2d 1338 (Mont.1977). In *Jones Press, Inc. v. Motor Travel Services, Inc.,* 286 Minn. 205, 176 N.W.2d 87 (1970), we held Minn.St. 1967, §§ 571.41, 571.42, and 571.60 of the Minnesota garnishment laws unconstitutional on the authority of *Sniadach.*

stone for subsequent constitutional challenges to prejudgment seizure statutes in other states. Five procedural safeguards were emphasized by the *Mitchell* court:

1. The creditor was required to allege in a verified affidavit specific facts, rather than conclusory allegations in statutory language, showing his entitlement to prehearing sequestration.

2. A showing of entitlement under the statute had to be made to a judge and judicial authorization obtained.

3. The creditor was required to post a sufficient bond to protect the debtor against damages should the writ be vacated later.

4. After seizure, the debtor could demand an immediate hearing where the creditor was compelled to prove the grounds underlying the writ.

5. The debtor could regain possession without seeking to vacate the writ by filing his own bond.

■ Since *Mitchell*, the Supreme Court has had two principal occasions on which to address this subject. In *North Georgia Fin-* *ishing, Inc. v. Di-Chem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975), the court held that the Georgia garnishment statute was unconstitutional under *Fuentes* and not saved by *Mitchell,* since the procedural safeguards were lacking. *Carey v. Sugar,* 425 U.S. 73, 96 S.Ct. 1208, 47 L.Ed.2d 587 (1976), followed. There, the court vacated the order of the federal district court that enjoined the enforcement of the New York prejudgment attachment statute on the ground that the federal court should have abstained from determining the constitutionality of the statute until the state court had an opportunity to construe its statute in a manner so as to remove any constitutional problems. 425 U.S. 79, 96 S.Ct. 1211, 47 L.Ed.2d 591. From *Carey, supra,* we infer that the state courts have certain latitude in interpreting prehearing or prejudgment seizure statutes to conform to the guidelines of *Mitchell* in order to preserve their constitutionality.

The Minnesota attachment statute complies substantially with the standards set forth in *Mitchell.*[2] The Minnesota statute is

---

**2.** The Minnesota attachment statute provides in relevant part:

"570.01 ALLOWANCE OF WRIT. In an action for the recovery of money, other than for libel, slander, seduction, breach of promise of marriage, false imprisonment, malicious prosecution, or assault and battery, the plaintiff, at the time of issuing the summons or at any time thereafter, may have the property of the defendant attached in the manner hereinafter prescribed, as security for the satisfaction of such judgment as he may recover. A writ of attachment shall be allowed by a judge of the court in which the action is brought, or a court commissioner of the county. The action must be begun as provided by law not later than 60 days after issuance of the writ.

"570.02 CONTENTS OF AFFIDAVIT. To obtain such writ, the plaintiff, his agent or attorney, shall make affidavit that a cause of action exists against the defendant, specifying the amount of the claim and the ground thereof, and alleging:

"(1) That the debt was fraudulently contracted; or

(2) That defendant is a foreign corporation, or not a resident of this state; or

(3) That he has departed from the state, as affiant verily believes, with intent to defraud or delay his creditors, or to avoid the service of a summons, or keeps himself concealed therein with like intent; or

(4) That he has assigned, secreted, or disposed of his property, or is about to do so, with intent to delay or defraud his creditors.

"570.03. CONDITIONS OF BOND. Before allowing the writ, the court shall require of the plaintiff a bond, in the penal sum of at least $250, conditioned that if judgment be given for the defendant, or if the writ be vacated, the plaintiff will pay all costs that may be awarded against him, and all damages caused by the attachment, not exceeding the penalty of the bond.

"570.09 MOTION TO VACATE. The defendant, within the time allowed to answer, or, if he has answered, at any time before the trial, may apply to the court, on notice, to vacate the writ of attachment. If the motion be made upon affidavits on the defendant's part, but not otherwise, the plaintiff may oppose the same by affidavits in addition to those upon which the writ was allowed.

"570.093 BOND OF DEFENDANT FOR RELEASE OF PROPERTY. Where his property has been attached a defendant may secure the release of the property from the attachment by giving a bond, if he acts before judgment is entered. The bond must be approved by a judge or justice of the court in which the action was brought, but where the action was brought

narrowly drawn. The writ of attachment is available only in limited, enumerated circumstances that constitute extraordinary situations within the meaning of *Sniadach* and *Fuentes* and that justify prehearing seizure. See, Minn.St. 570.02. Specifically, the provisions of the Minnesota statute satisfy each of the safeguards outlined in *Mitchell.*

■ First, the plaintiff-creditor must allege by affidavit the existence of one of the enumerated circumstances as grounds for the writ. See, Minn.St. 570.02. On this point, defendants in the instant case argue that the procedure is constitutionally deficient because conclusory allegations would satisfy the language of the statute yet not permit the authority empowered to issue the writ to pass on the sufficiency of the grounds. In so arguing, defendants overlook our holding in *Jorgenrud v. Mills,* 283 Minn. 516, 166 N.W.2d 339 (1969). The issue in *Jorgenrud* was whether the allegations of an affidavit upon which a writ of attachment was issued were fatally defective because they were set forth in the disjunctive, repeating the language of the statute. This court affirmed the trial court's order quashing the writ, finding the holding of an early Minnesota case, *Guile v. McNanny,* 14 Minn. 520, 521 (Gil. 391, 392), to be dispositive. *Guile* held that the intention of the statute was to protect innocent debtors as well as creditors and, therefore, the affidavit must specify the acts of the debtor which constitute sufficient cause for attachment. Thus, compliance with Minn.St. 570.02, as we have construed it, requires more than a recitation of conclusory allegations in statutory language.

Second, Minn.St. 570.01 empowers only a judge or county court commissioner to issue the writ. While *Mitchell* refers only to a judge and judicial control, we note that special judicial status is conferred by Minn.St. 489.02 upon county court commissioners.[3] Other courts have found such limited judicial status sufficient to meet the *Mitchell* standard. See, e.g., *Hutchinson v. Bank of North Carolina,* 392 F.Supp. 888 (M.D.N.C.1975).

■ Third, the *Mitchell* safeguard of an immediate postseizure hearing, if requested by the debtor, is provided by Minn.St. 570.-09. By bringing a motion to vacate, the debtor imposes a burden upon the creditor to prove the sufficiency of the grounds for attachment before the trial court. *Reiling v. Wood,* 202 Minn. 576, 279 N.W. 579 (1938).

Last, the two *Mitchell* bonding safeguards are present in the Minnesota statute: Minn.St. 570.03 requires the creditor to post a sufficient bond for the protection of the debtor prior to attachment, and after seizure the debtor can regain immediate possession of the attached property by giving a bond pursuant to Minn.St. 570.093.[4]

in the district court, the court commissioner may approve the bond. The bond shall be executed in a penal sum at least double the amount claimed in the writ of attachment or, where the value of the property attached is less than the amount claimed, twice such value. The bond shall be conditioned to pay any judgment rendered against the defendant in the action, or as much as equals the value of the property attached. If he approves the bond, the judge, justice, or court commissioner shall issue an order discharging the attachment and releasing the property. When the defendant has filed the order with the bond and served a copy of the order upon the plaintiff or his attorney, the order becomes effective."

3. "489.02 QUALIFICATION; POWERS. Court commissioners shall have and may exercise the judicial powers of a judge of the district court at chambers. Among other powers conferred by law, they are empowered to issue writs of habeas corpus, to take acknowledgments of deeds and other written instruments, to take depositions and certify to the same, to perform the marriage ceremony, to take disclosures in garnishment proceedings pending in the district court, and orders for the examination of judgment debtors in proceedings supplementary to execution may be made returnable before the court commissioner."

4. While we are not unmindful of defendants' claim that the cost of posting a bond in an amount at least double the amount claimed in the writ is unreasonable, we note that the record contains no evidence with respect to the cost that defendant would have incurred had he sought a bond, nor are we presented with any legal arguments which would persuade us that the bond amount is per se unreasonable.

Defendants challenge the statute on one other ground. If the creditor complies with the provisions of the statute, the judge or court commissioner must issue the writ. This lack of discretion apparently is the basis of defendant's complaint that the Minnesota statute is unconstitutional under *Mitchell* because it fails to require the issuing authority to consider on a case-by-case basis the consequences to the individual debtor resulting from seizure of the property. Defendant misconstrues *Mitchell* on this issue. While it is true that the debtor's deprivation is a factor to be weighed, not only under *Mitchell* but also under *Sniadach* and *Fuentes,* the severity of the impact on the debtor and the interest of the creditor are to be balanced only within the context of determining whether the statutory procedural scheme for attachment on its face comports with due process safeguards. It is not a process to be undertaken by the trial court on a case-by-case basis. See, *Mitchell v. W. T. Grant Co.,* 416 U.S. 600, 618, 94 S.Ct. 1895, 1905, 40 L.Ed.2d 406, 420 (1974).

In balancing the creditor's and debtor's interests within the procedural scheme of the Minnesota attachment statute, we concur in the conclusion of the Supreme Court in upholding the Louisiana statute challenged in *Mitchell, supra* :

"  *  *  *  The system protects the debtor's interest in every conceivable way, except allowing him to have the property to start with, and this is done in pursuant of what we deem an acceptable arrangement pendente lite to put the property in the possession of the party who furnishes protection against loss or damage to the other pending trial on the merits." 416 U.S. 618, 94 S.Ct. 1905, 40 L.Ed.2d 420.

Because the Minnesota statute complies with the procedural safeguards outlined in *Mitchell,* we hold that it is constitutional on its face.

Furthermore, we find no indication that the attachment statute was applied to defendants in an unconstitutional manner. Defendants argue that this attachment has deprived them of their sole means of support, the income-producing assets of their small business. They cite *Sniadach, supra,* as authority for the simple proposition that the statutory attachment in this case must fail because the impact on the debtors outweighs the creditor's need for a prehearing remedy. Because attachment of a business that generates defendants' sole income is tantamount to prejudgment wage garnishment, which was prohibited by *Sniadach,* defendants conclude that the Minnesota statute was unconstitutionally applied.

*Sniadach* does not compel a finding of unconstitutionality in this instance. Although the severe impact on the debtor was one of the reasons that the garnishment procedure in *Sniadach* was invalidated, the court noted that the prejudgment garnishment procedure might be tenable under other circumstances:

"Such summary procedure may well meet the requirements of due process in extraordinary situations.  *  *  *  But in the present case no situation requiring special protection to a state or creditor interest is presented by the facts; nor is the Wisconsin statute narrowly drawn to meet any such unusual conditions." 395 U.S. 339, 89 S.Ct. 1821, 23 L.Ed.2d 352.

Because the instant case falls within one of the narrowly-drawn statutory classifications of "extraordinary situations" which call for creditor protection, it is distinguishable from the facts in *Sniadach,* and the specific deprivation of these defendants is not the determinative factor in this court's review of the Minnesota statute. Defendants seem to dispute that this was an extraordinary situation, arguing that the district court should have realized Richard Gamer's threat to dispose of the collateral was idle because of the security interest perfected by plaintiff in all of the property. If, indeed, defendants did not possess the power to dispose of the property, then perhaps sufficient grounds for attachment would not have been established. But the existence of a security interest does not necessarily prevent the creditor's interest from

being defeated. See, Minn.St. 336.9–307.[5] Defendant's admitted statements formed a reasonable basis for the district court's decision to issue the writ in order to protect the creditor's interest.

While the attachment in this case appears to have had severe consequences for defendants, we observe that plaintiff resorted to attachment of the collateral only after a series of futile attempts to collect the debt over a period of months, and then proceeded in strict compliance with the attachment statute. In upholding the Minnesota statute, we share the sentiment expressed in *Mitchell, supra* :

> "The Court must be sensitive to the possible consequences, already foreseen in antiquity, of invalidating this state statute. Doing so might not increase private violence, but self-help repossession could easily lessen protections for the debtor." 416 U.S. 618, 94 S.Ct. 1905, 40 L.Ed.2d 420.

We cannot ignore the fact that plaintiff, as a secured creditor, may have had certain rights and remedies arising under the law of secured transactions which it forebore and proceeded instead under the attachment statute. Indeed, but for the statute, defendants may have experienced a far lesser measure of due process than they were afforded.

We note additionally that Minn.St. 550.37 exists to mitigate the impact on the debtor by establishing the right to claim certain property as exempt. Normally, a business person could preserve up to $5,000 worth of business assets. Had that exemption been available here, the impact on these defendants would have been minimal. The exemption was denied these defendants, however, because of their representation to the district court that the property was partnership property, which is not subject to statutory exemption. See, *Security Bank of Minnesota v. Beede,* 37 Minn. 527, 35 N.W. 435 (1887); *Prosser v. Hartley,* 35 Minn. 340, 29 N.W. 156 (1886); *Baker v. Sheehan,* 29 Minn. 235, 12 N.W. 704 (1882). Defendants do not challenge the district court's denial of exemptions or claim any constitutional infirmity arising from the exclusion of partnership property from exemption. Therefore, those issues are not before us.

■ Although we do not find an unconstitutional application of the statute within the facts of this case, we are troubled by the reluctance of the sheriff who executed the writ to sequester only such an amount of property as would suffice to satisfy the amount set forth in the writ. While exactitude can not reasonably be imposed upon the officer executing the writ, Minn.St. 570.04[6] clearly requires the exercise of some discretion so that the debtor may not

---

5. "336.9–307 PROTECTION OF BUYERS OF GOODS. (1) A buyer in ordinary course of business (subsection (9) of section 336.1–201) other than a person buying farm products from a person engaged in farming operations takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence.

"(2) In the case of consumer goods, a buyer takes free of a security interest even though perfected if he buys without knowledge of the security interest, for value and for his own personal, family or household purposes unless prior to the purchase the secured party has filed a financing statement covering such goods.

"(3) A buyer other than a buyer in ordinary course of business (subsection (1) of this section) takes free of a security interest to the extent that it secures future advances made after the secured party acquires knowledge of

the purchase, or more than 45 days after the purchase, whichever first occurs, unless made pursuant to a commitment entered into without knowledge of the purchase and before the expiration of the 45 day period."

6. Minn.St. 570.04 Issuance, contents, and scope of writ:

"Upon filing the affidavit and bond, with the order allowing such writ, the clerk shall issue the same, stating therein the amount of the plaintiff's demand. Several writs may issue at the same time, directed to the sheriffs of different counties. Each shall require the sheriff to attach and safely keep the unexempt property of defendant found in his county, or so much thereof as shall suffice to satisfy the amount claimed, with expenses and costs. All property not exempt from execution under the judgment demanded in the action shall be subject to attachment therein."

be deprived of property, albeit for a short time, in an amount far in excess of the creditor's claim.

Affirmed.

OTIS, J., took no part in the consideration or decision of this case.