Melanie OLSON and Dennis J. Olson, Respondents,

v.

Ivan Marvin ISCHE, et al., Defendants,

Knight Klub, Inc., et al., Appellants.

No. C2–82–1042.

Supreme Court of Minnesota.

March 11, 1983.

Koenig & Robin and John W. Wood, Jr., Mound, for appellants.

O'Neill, Burke & O'Neill and Peter H. Grills, St. Paul, for Olsons.

**SIMONETT, Justice.**

This is an appeal from an order of the Carver County District Court denying defendants' motion for an order vacating a writ of attachment or, alternatively, for an order increasing the attachment bond, in which defendants challenge the constitutionality of our attachment statute as amended in 1981, Minn.Stat. § 570.02, subd. 2(b) (1982). We reverse the trial court's order denying defendants' motion to vacate and hold the statute to be unconstitutional on its face.

On January 30, 1982, plaintiff-respondent Melanie Olson was seriously injured when the automobile she was driving collided with an automobile driven by defendant Ivan Marvin Ische which allegedly came across the centerline into her lane. An investigation disclosed evidence that Ische had been drinking intoxicating liquor earlier that day at the Knight Klub, Inc., a tavern in Waconia. Mrs. Olson and her husband promptly commenced this action for her injuries against defendant Ische and others, including Knight Klub, Inc., its surety, Dana J. Nelson, as owner, agent and employee of the Knight Klub, and three other persons having a legal or equitable interest in the tavern.

Shortly thereafter, the plaintiffs, without notice to defendants, applied for a writ of attachment against the property of defendants Knight Klub, Inc., and Dana J. Nelson. In a supporting affidavit, plaintiffs' attorney recounted the facts of the accident and the evidence of a dramshop violation by the tavern. The affidavit stated that the tavern property was subject to two contracts for deed, defendant Nelson being in possession of the property as vendee under the second contract for deed; that Nelson had entered into a purchase agreement for the sale of the business; and that if the property or the proceeds of the sale thereof were not secured, there would be insufficient assets to satisfy a judgment. Without a hearing, and as provided by our attachment statute, the trial court granted a writ of attachment on March 4, 1982, against defendants Knight Klub, Inc., Dana J. Nelson and the other three owners of an interest in the business on the real estate of the business, its liquor licenses, any agreements for the sale of the real or personal property of the business, and any proceeds resulting from the sale. (The writ did not attach the personal property itself, such as bar inventory, which would have closed the business.) There was no claim in the affidavit that the defendants were attempting to secrete or dispose of any assets with intent to defraud or delay creditors. Subsequently, the trial court denied the motion of defendants to vacate the writ of attachment or to increase the bond from its original sum of $5,000. Because of the attachment, defendant Nelson alleges that his sale of the business, for which he would have realized a gross gain of $20,000, was cancelled. Defendants Knight Klub, Inc., and Nelson appeal, asserting that the Minnesota attachment statute is unconstitutional.

In *International State Bank v. Gamer,* 281 N.W.2d 855 (Minn.1979), we held Minn. Stat. § 570.02 (1980), the predecessor of our current statute, to be constitutional since it comported substantially with the standards set forth in *Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974). We need not review again here the law of procedural due process for prejudgment, prehearing attachment as set out in *Gamer* and in the four pertinent United States Supreme Court decisions. *See North Georgia Finishing, Inc. v. Di-Chem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751

(1975); *Mitchell v. W.T. Grant Co., supra; Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); and *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969).

In 1981, however, the Minnesota Legislature drastically revised our attachment statute. *See* 1981 Minn.Laws, ch. 277. Subdivision 1 of the current statute, Minn. Stat. § 570.02 (1982), provides: "To obtain the writ of attachment, the plaintiff, his agent or attorney, shall make affidavit that a cause of action exists against the defendant, specifying the amount of the claim and the ground thereof."[1] Subdivision 2 of the current statute is divided into paragraphs (a) and (b). Paragraph (a) deals with attachment to acquire quasi in rem jurisdiction and is not involved here. Subdivision 2(b), with which we are concerned, deals with attachment to secure property to satisfy a future judgment and reads:

(b) An order of attachment which serves only to secure property and not to acquire jurisdiction over the defendant may be issued in the following situations:

(1) When a person, resident or nonresident, a corporation, domestic or foreign, owns or has any interest in any kind of property, tangible or intangible, which is present within the state and may be applied to the satisfaction of a valid in personam judgment against the defendant; or

(2) When a valid in personam action has been instituted and a person, resident or nonresident, or corporation, domestic or foreign, owns or has an interest in any kind of property, tangible or intangible, which is present within the state and may be applied to the satisfaction of a valid in personam judgment, when rendered, against the defendant, if:

(i) That person or corporation has removed or is about to remove property from this state; or

(ii) That person or corporation has assigned, disposed of, or secreted or is about to assign, dispose of, or secrete, property.

■ 1. Subparagraph (1) above, it is plain, permits attachment without notice or a hearing upon the mere showing that the debtor owns or has an interest in any property which is present within the state and which may be applied to the satisfaction of a valid in personam judgment against the defendant. This statutory ground for attachment certainly is not narrowly drawn as is required by *Mitchell;* it is enough that the prospective debtor simply owns property. In *Fuentes* and *Sniadach* the United States Supreme Court held that preseizure notice and hearing are required by due process except in "extraordinary situations." The mere fact that the debtor owns property does not constitute an extraordinary circumstance which would justify a prejudgment prehearing attachment. These extraordinary situations would arise where seizure is directly necessary to secure an important governmental or general public interest, where there is a special need for prompt action, or where a narrowly drawn prehearing seizure statute is invoked only after a judge determines such seizure to be necessary and justified. *Fuentes,* 407 U.S. at 91, 92 S.Ct. at 1999.

Subparagraph (1) fails completely to balance the competing interests of the creditor and the debtor, the interest in protecting creditor remedies and the potential harm to the debtor resulting from the deprivation of property. The statute unjustifiably yields to the creditor's interests without due consideration given to the debtor's potential harm from seizure of his property. Consequently, we hold that subdivision 2(b)(1) of section 570.02 (1982), is, on its face, overbroad, violative of due process, and unconstitutional.

■ 2. We next consider paragraph (2) of subdivision 2(b) of the current statute.

---

1. Although not clear, we construe subdivision 1 to require the affidavit to specify the grounds which constitute the basis for an attachment, not the grounds for the underlying cause of action. As we held in *Gamer,* the creditor must allege in a verified affidavit specific facts, rather than conclusory allegations in statutory language, showing his entitlement to prehearing sequestration.

It is unclear to us why paragraph (2) was added, since paragraph (1), if valid, allows attachment simply for owning property and would, therefore, include the instances covered in paragraph (2). In any event, paragraph (2) permits attachment if (i) the prospective debtor has removed or is about to remove property from this state, and (ii) the debtor has assigned, disposed of or secreted property or is about to do so.

We need not decide if the first ground, removal of property from the state regardless of the intent in doing so, is a sufficient constitutional base for prehearing attachment, because that issue is not before us. The prior statute allowed attachment if the debtor (rather than his property) departed the state with intent to defraud or delay his creditors or to avoid process. .

The second ground for attachment in subdivision 2(b)(2) is before us now. In the prior 1980 version of the attachment statute, discussed in *Gamer,* attachment was allowed if the debtor assigns, secretes or disposes of property or is about to do so "with intent to delay or defraud his creditors." This quoted phrase is absent in the current statute. Now the creditor need only allege that the debtor has assigned, disposed of, or secreted property, or is about to do so, regardless of the debtor's intent. This statutory language does not adequately balance the competing interests of the creditor and debtor and fails to afford adequate protection to the innocent debtor. We have no hesitancy in declaring subdivision 2(b)(2)(ii) of section 570.02 to be overbroad, and we hold it to be unconstitutional.

█ 3. We assume the legislature, having in mind the guidelines discussed in *Gamer,* will promptly remedy the situation. We add one further comment. Even if the 1982 attachment statute were more narrowly drawn as is the 1980 version, prehearing attachment in this case would be inappropriate since the plaintiffs concede that the proposed sale of Knight Klub, Inc., was negotiated and arranged in the ordinary course of business with *no* intent to delay or defraud its creditors. In fact, the business was listed for sale before the car accident

giving rise to the attachment occurred, and the purchase agreement was signed by defendant Nelson and the prospective purchasers before they discovered the car accident had occurred and before the plaintiffs' lawsuit was commenced in district court. Thus, the equities weigh heavily in defendants' favor, and we would find even the 1980 version unconstitutional *as applied* to the facts of this appeal.

Reversed.