**Frederick BONGARD, Appellant,**

v.

**Marilyn BONGARD, Respondent.**

**No. C4–83–1313.**

Court of Appeals of Minnesota.

Dec. 28, 1983.

Diane M. Knoss, Nicklaus, Monroe & Fahey, Chaska, for appellant.

Bruce P. Wyant, Wyant & Morgenson, Bloomington, for respondent.

Heard, considered and decided by PARKER, J., P.J., and WOZNIAK and LANSING, JJ., with oral argument.

OPINION

WOZNIAK, Judge.

This interlocutory appeal comes to the Court of Appeals from the trial court's refusal to vacate a writ of attachment.

Minn.R.Civ.App.P. 103.03(c). The writ was issued September 28, 1982. Mr. Bongard moved the trial court to vacate the writ. The trial court refused. After the trial court's decision and after the time for appeal had expired, portions of the attachment statute were declared unconstitutional. Mr. Bongard again moved the trial court to vacate the writ. Again the trial court refused. We affirm.

## FACTS

Marilyn Bongard claims that her ex-husband defrauded her in the property settlement of their marriage dissolution. According to her, Mr. Bongard hid a partnership agreement between himself and his brother. The assets of the partnership included a farm and a garage in New Germany, Minnesota. The attachment in question is part of her lawsuit.

After 22 years of marriage, Marilyn and Frederick Bongard dissolved their marriage. The litigation involved three separate lawsuits: one by Ms. Bongard in Hennepin County and two by Mr. Bongard, one in North Carolina and one in Carver County. The dissolution was finally granted on April 12, 1973 by a final judgment of the North Carolina court.

During the dissolution proceedings, Mr. Bongard maintained he had no partnership with his brother and had no assets of any substance in Minnesota. In a verified answer to the Hennepin County dissolution suit, Mr. Bongard claimed that he "owns no real property in Minnesota, has no business interest of any kind in Minnesota ..."

In a sworn affidavit in the Carver County dissolution, Mr. Bongard made no mention of any partnership assets or ownership of the farm. He did mention the garage, but only that he was closing it down.

Ms. Bongard relied on these statements when entering into the property settlement. The final settlement contained no references to the property in New Germany, Minnesota.

After the dissolution was final, Mr. Bongard sued his brother for withholding partnership assets. Mr. Bongard claimed in *sworn pleadings* that he and his brother had a partnership in all but name since 1966. In his verified complaint, Mr. Bongard stated:

> only in the area of disclosing an inventory figure did Roger Bongard seem evasive ... Fred, plaintiff herein, did not want to push the matter either as he and his wife were voluntarily separated ....

Fred Bongard continued:

> Fred stated to Arthur Wagner that the title would be put in the name of Roger as Fred was still not through with his domestic problems .... Everyone understood Fred was to be the owner of the farm at the closing .... The formal partnership agreement ... was to be drawn up as soon as Fred's domestic problem was resolved ...

The suit was settled; Mr. Bongard received $85,000 from his brother.

Ms. Bongard sued to get a portion of Mr. Bongard's settlement with his brother. As part of that suit, she attached $50,000 of the settlement proceeds between Mr. Bongard and his brother. Mr. Bongard moved on January 3, 1983 to vacate the attachment. On January 7, 1983, the trial court refused. On June 30, 1983, Mr. Bongard brought another motion to vacate pursuant to the Supreme Court's declaring portions of the attachment statute unconstitutional. The trial court denied the motion on August 3, 1983 and Mr. Bongard appealed.

## ISSUES

1. Is the appellant precluded from making the instant appeal by his failure to timely appeal from a prior order denying his first motion to vacate the writ of attachment?

2. Does the holding of the Minnesota Supreme Court in *Olson v. Ische*, 330 N.W.2d 710 (Minn.1983), that Minnesota Statutes § 570.02(2)(b)(2)(ii) is unconstitutional as overbroad, invalidate an attachment made pursuant to that statute, thereby requiring the attachment to be vacated?

3. Does the *Ische* decision cause the pre-1981 version of the statute to remain in effect, and, if so,

4. Is the attachment in this case constitutionally valid under the pre-1981 statute?

## ANALYSIS

1. The respondent, Ms. Bongard, contends that this is not an appealable order. An appeal from an order must be "within 30 days after service by the adverse party of written notice of filing." Minn.R.Civ. App.P. 104.01. Thirty days have passed since notice of filing the first motion to vacate the writ. Her contention is that a second motion to vacate the same writ does not revive or extend the time for appeal.

■ Time limits on appeals are jurisdictional. Once the time limit has passed, this court has no jurisdiction to hear the case and the appeal must be dismissed. *Jesmer Co. v. Wurdemann-Hjelm Corp.*, 250 Minn. 485, 488, 85 N.W.2d 207, 209 (1957). It is well established that "where the right to appeal from an unvacated appealable order has expired, the right of appeal is not revived by a negative order on a second motion for the same relief." *Barrett v. Smith*, 183 Minn. 431, 440, 237 N.W. 15, 19 (1931); *see also Kloos v. Soo Line R.R.*, 282 Minn. 168, 163 N.W.2d 567 (1968), *Ross v. Duluth, M. & R. Ry. Co.*, 201 Minn. 225, 275 N.W. 622 (1937). If the limits could be extended by merely making a new motion, the time limits would be meaningless.

A party can appeal from a second motion, however, if there are "grounds not included in the first one and satisfactory reasons appear for the omission." *Trickel v. Calvin*, 230 Minn. 322, 326, 41 N.W.2d 426, 568 (1950). While such a motion may be for the "same relief," the determinant is new grounds and justifiable reasons for omission.

■ In the first motion, the ground for objection was that the attachment violated the attachment statute. The statute was assumed constitutional. Minn.Stat. § 645.-17(3) (1982). In the second motion, the underlying statute had been declared un-constitutional and there was uncertainty and a vacuum in the law. Because of this vacuum, the grounds underlying the second motion were new and different from the first. Not allowing an appeal from this uncertainty would allow potentially unconstitutional deprivations to stand because of a rule of judicial economy. *See E.C.I. Corp. v. G.G.C. Corp.*, 306 Minn. 433, 237 N.W.2d 627 (1976) (*Barrett* rule not strictly applied in the interests of justice). Therefore, under the *Trickel* case, this order is appealable.

2. The predecessor to the statute in question was constitutional. *International State Bank v. Gamer*, 281 N.W.2d 855 (Minn.1979). The legislature drastically revised that attachment statute in 1981, over-ruling a long-standing policy in Minnesota. Act of May 28, 1981, ch. 277, § 1, 1981 Minn.Laws 1285, 1286 (codified at Minn. Stat. § 570.02 (1982)). The Minnesota Supreme Court found portions of the act unconstitutionally overbroad in light of United States Supreme Court decisions. *Olson v. Ische*, 330 N.W.2d 710 (Minn.1983).

In this case, the attachment was issued under Minn.Stat. § 570.02(2)(b)(2)(ii) (1982). That section allowed attachment if "[t]hat person or corporation has assigned, disposed of, or secreted or is about to assign, dispose of, or secrete, property." *Id.*

After the writ issued, the Minnesota Supreme Court declared that section unconstitutional because the "statutory language does not adequately balance the competing interests of creditor and debtor." *Ische*, 330 N.W.2d at 713. The legislature had deleted language from the prior statute which required "intent to delay or defraud ... creditors."

Generally, a court's decision is retroactive "absent special circumstances or specific pronouncements ... that its decision is to be applied prospectively only." *Hoff v. Kempton*, 317 N.W.2d 361, 363 (Minn. 1982). The *Ische* court made no specific pronouncement renouncing retroactive application.

The *Hoff* court listed three special circumstances needed if a case is to be applied prospectively: (1) the case establishes a new principle of law; (2) retroactive application will retard the operation of the new principle; (3) retroactive application would be inequitable. *Id.* (applying United States Supreme Court case of *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971)).

The *Ische* decision changed the existing statutory law. Its purpose, preventing unconstitutional attachments, is furthered by retroactive application. Inequities of the worst kind would result from not applying *Ische* retroactively: unconstitutionally attached property could remain unconstitutionally attached. Since not all of the special circumstances exist, *Ische* will be retroactively applied. The statute under which the attachment was ordered was unconstitutional. The fact that the statute was unconstitutional does not necessarily mean, however, that the attachment was void.

◼ 3. Since the statute was declared unconstitutional and its effect was retroactive, this court must determine the status of the law in the interim.[1] As a general rule, an unconstitutional amendment has no effect and leaves the statute as it was before the amendment. *People v. Mensching*, 187 N.Y. 8, 79 N.E. 884 (1907); *Mazurek v. Farmers' Mut. Fire Ins. Co.*, 320 Pa. 33, 181 A. 570 (1935); 16 C.J.S. *Constitutional Law*, § 101 at 474 (1956).

In *State v. Luscher*, 157 Minn. 192, 195 N.W. 914 (1923), the Minnesota legislature amended a law on the licensing of dentists. The amendment created many new regulations but exempted those dentists already practicing. The amendment was found to violate equal protection and was struck down. The dentist was still convicted, however, of practicing without a license. Since the amendments were void, the statute prior to the amendments was applied.

In *State v. One Oldsmobile Two-door Sedan, Model 1946*, 227 Minn. 280, 35 N.W.2d 525 (1948), a car was confiscated under Minnesota's deer shining statute. The defendant challenged the confiscation on the ground that the amendment allowing the confiscation was unconstitutional. The Supreme Court reiterated its reasoning in *Luscher*. "An unconstitutional statute, being void and inoperative, *cannot* repeal or *in any way affect an existing one.*" *Id.* at 288, 35 N.W.2d at 530 (emphasis added).

The appellant attempts to distinguish these cases by claiming that the prior law can be reinstated only when a repealer is present in the session laws and the repealer is also unconstitutional. Neither *Luscher* nor *One Olds* uses the appellant's reasoning. Both looked to the general principle that an unconstitutional amendment is void. A Pennsylvania case demonstrates the weakness of appellant's reasoning. In *Mazurek v. Farmers' Mut. Fire Ins. Co.*, 320 Pa. 33, 181 A. 570 (1935), the Court stated that:

> [w]here a subsequent statute, if valid, acts as a repeal of a prior statute only by implication ... is itself unconstitutional, it must be obvious that the earlier act remains in full force and effect. This follows inevitably from the fact that in the eyes of the law it never came into existence.... Nor does the fact that the later invalid statute contains a clause repealing all prior inconsistent legislation work a change in the result. [the court cites *Luscher*]

*Id.* 181 A. at 572. A repealer in the session laws enacting the unconstitutional amendment is not required for the prior statute to remain in effect.

◼ The appellant also argues that the Minnesota rule on severability of constitutional portions of an unconstitutional law [Minn.Stat. § 645.20 (1982)] prevents the pre-1981 statute from operating. This argument misconstrues the severability statute. The purpose of the severability clause is to allow the continued operation of constitutional parts of a statute. Here the appellant wants to use the severability

---

**1.** In the wake of *Ische,* the legislature amended the attachment statute to remedy its unconstitu- tionality. Act of June 1, 1983, ch. 243, § 3, 1983 Minn.Laws 838, 839.

clause to create a statutory void. By its terms, the severability section allows severable sections to stand but does not address the issue of how to deal with unconstitutional gaps. As noted in *Mazurek*, a severability clause "must be given reasonable interpretation." *Id.* 181 A. at 573. The severability clause cannot be used to create a result opposite to that intended.

 4. The pre-1981 statute provides for attachment if the plaintiff shows the defendant has "assigned, secreted or disposed of his property, or is about to do so, with intent to delay or defraud his creditors." Minn.Stat. § 570.02(4) (1980). The allegation of intent to conceal with specific acts to show that intent is enough to warrant a constitutional attachment under the pre-1981 statute. *International State Bank v. Gamer*, 281 N.W.2d 855 (Minn. 1979).

In the affidavit and order for attachment, it is noted that Mr. Bongard has "concealed and secreted property from Plaintiff in the past and is about to assign, secrete or dispose of his property with intent to delay or defraud his creditors," and cites specific exhibits. Mr. Bongard's own sworn statements clearly show his intent to keep his share of the partnership out of the property settlement. These statements are about the very assets alleged to have been fraudulently concealed. The evidence relied on in the court's finding of an intent to conceal was persuasive.

The long-standing rule, as outlined in the pre-1981 version of Minn.Stat. § 570.02 and the court's decision in *Gamer*, has been to allow pre-judgment attachment as long as the due process rights of the defendant were respected. Here defendant has had full due process of the law as demonstrated by two court hearings on the matter held January 3, 1983 and June 30, 1983, respectively. The attachment was valid under the pre-1981 statute.

## DECISION

Mr. Bongard originally moved to vacate a writ of attachment, which was denied. The time for appeal expired. Subsequently, the underlying statute authorizing the issuance of the writ of attachment was declared unconstitutional. Mr. Bongard again moved the court to vacate the writ, which was denied, and a timely appeal was filed.

Because of the uncertainty this created in the law, there were sufficient new grounds to warrant an appeal from the denial of the second motion to vacate.

The statute under which the attachment was ordered was unconstitutional, is to be applied retroactively, but does not necessarily void the writ of attachment.

The pre-1981 statute remained in effect. The attachment was valid under the pre-1981 statute.

We affirm.