**In re ESTATE OF David John ROSENBERGER, Deceased.**

**No. C4–92–1237.**

Court of Appeals of Minnesota.

February 2, 1993.

Donna J. Blazevic, John P. Buckley, Bassford, Heckt, Lockhart, Truesdell & Briggs, P.A., Minneapolis, for appellant Utica Mutual Ins. Co.

David W. Larson, Kenneth D. Nelson, Dudley & Smith, St. Paul, for respondent Estate of David Rosenberger.

Considered and decided by KALITOWSKI, P.J., and NORTON and HARTEN, JJ.

## OPINION

NORTON, Judge.

Decedent's widow was awarded family maintenance under Minn.Stat. § 525.15(4) (1990) from his estate which had been attached in a separate trial court action by appellant. Appellant argues that because neither the widow nor the estate could prove that the assets in the estate were the property of the estate, no family maintenance should have been paid. We affirm the probate court.

## FACTS

After allegedly embezzling $147,744.01 from his employer, David Rosenberger committed suicide. Utica Mutual Insurance Company (Utica) reimbursed the employer for the loss pursuant to a fidelity bond and made a claim with the estate's personal representative for reimbursement. The claim was denied. Ancillary to a suit filed against the estate, Utica obtained a district court order attaching all of the nonexempt assets of the estate. Decedent's wife then moved the probate court for family maintenance under Minn.Stat. § 525.15(4) (1990). Utica opposed the motion, arguing that the order for attachment prevented any estate assets from being paid over to decedent's wife. The probate court granted the motion on the grounds that a claim for maintenance has priority over all other claims. Utica now appeals.

## ISSUE

When a trial court has attached an entire estate in one action, may a probate court nevertheless grant family maintenance from that estate?

## ANALYSIS

I. *Applicable law.*

A. Law of attachment.

 When a person has acquired property by fraud or other felonious means, a claimant to that property may attach the property after filing suit for its recovery and providing the court with facts demonstrating a "probability of success on the merits." Minn.Stat. §§ 570.02, subd. 1(4), (5), 570.026, subd. 3 (1990). The purpose of attachment is to preserve the status quo while title to the property is determined on the merits. *See Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 613, 94 S.Ct. 1895, 1903, 40 L.Ed.2d 406 (1974). The possessor of attached property may prevent execution upon that property by posting an appropriate bond. Minn.Stat. § 570.026, subds. 4, 5 (1990).

Some property is exempt from attachment. Such exemptions include household

furniture, television sets, life insurance benefits, pension funds, a motor vehicle, tort claims, and workers' compensation awards. Minn.Stat. §§ 550.37, 176.175 (1990). Family maintenance is not one of the itemized exemptions.

### B. Family maintenance.

■ Because probate tends to be a protracted process, the personal representative of an estate must give the family of the decedent reasonable maintenance during administration. Minn.Stat. §§ 525.-15(4), 525.151 (1990). This family maintenance must be paid out of the estate, which is defined as "every right and interest of a decedent in property, real or personal, except such as are terminated or otherwise extinguished by the death." Minn.Stat. § 525.13 (1990). Family maintenance may be paid out even when the estate is insolvent. Minn.Stat. § 525.15(4).

Just as attachment freezes the status quo in order for underlying claims to be sorted out, the probate code freezes the status quo (except for the payment of maintenance) by prohibiting executions of attachments. Minn.Stat. § 524.3–812 (1990); *see also Lundgren v. Gaudiane*, 782 P.2d 285, 287–88 (Alaska 1989) (execution under UPC § 3–812 impermissible even when execution allegedly upon funds that are not property of the estate).

### II. *Resolution of conflict.*

The attachment and family maintenance statutes are in conflict. The attachment statute demands that the estate stay where it is to the exclusion of all else; the family maintenance statute demands that money be paid out to the exclusion of all else. Because Utica's claim is for specific estate assets rather than a general creditor's claim against the estate, the usual probate process for settling claims is inapplicable. Minn.Stat. § 524.1–201(4) (1990) (defining "claim"); *In re Estate of Renczykowski*, 409 N.W.2d 888, 891 (Minn.App.1987). While both attachment and family maintenance are frequent subjects of legislation in other states, apparently no appellate

court has attempted to reconcile this conflict.

■ The normal rules for resolving a conflict in statutes do not apply very well to this case. For example, there is a general rule that when statutes are in conflict, the later statute controls. Minn.Stat. § 645.26, subd. 4 (1990). However, because both of these statutory schemes date from territorial days and have been amended many times, it is not at all clear which one should be considered the more recent. Minn.Terr.Stat. ch. 49, § 23 (1851) (a widow "shall have her reasonable sustenance out of the estate for one year"); Minn. Terr.Stat. ch. 69, art. 4, §§ 93–109 (1851) (providing for attachment).

■ For another example, there is a general rule that particular provisions control over general provisions. Minn.Stat. § 645.-26, subd. 1 (1990). However, because both statutory schemes seem to be equally general, neither controls over the other. As a result, this court must determine the intent of the legislature in applying these statutes. Minn.Stat. §§ 645.16, .17(5) (1990).

■ We hold that the family maintenance statutes should have precedence. Statutes serving a humanitarian public purpose are usually construed liberally. *Lecy v. Sage Co.*, 460 N.W.2d 102, 104 (Minn. App.1990), *pet. for rev. denied* (Minn. Oct. 25, 1990). In addition, "the legislature intends to favor the public interest as against any private interest." Minn.Stat. § 645.-17(5).

The family maintenance statutes serve such a humanitarian purpose. *See Strauch v. Uhler*, 95 Minn. 304, 307, 104 N.W. 535, 536 (1905). Allowing maintenance to a family during the probate of an estate keeps those family members off the welfare roles at least when there are arguably assets with which to support the family. *In re Estate of Hutchinson*, 577 P.2d 1074, 1076 (Alaska 1978). To require a personal representative to affirmatively prove title before paying maintenance would thwart the very purpose of maintenance—to provide for the decedent's family's needs *before* the personal representa-

tive sorts out adverse claims. Indeed, our supreme court has permitted family maintenance to be paid even when no inventory or appraisal of the estate's assets has been prepared. *See Strauch*, 95 Minn. at 307, 104 N.W. at 536.

Attachment statutes, on the other hand, must be construed narrowly because attachment merely pits one private interest against another. *See Olson v. Ische*, 330 N.W.2d 710, 712 (Minn.1983). In addition, we note that in the event appellant is later able to prove the underlying case against the estate, appellant will have appropriate remedies to recover money improperly paid out of the estate. Minn.Stat. §§ 524.3–1004, –1006 (1990).

## DECISION

The probate court properly granted family maintenance to decedent's wife.[1]

Affirmed.

---

1. We note that this holding is limited to the rare situation where the entire estate is attached. When only part of an estate is attached, family maintenance can still be paid out of the unattached part.