*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0340**

In re the Estate of:
Michael Peter Hanowski, Deceased.

**Filed September 28, 2015
Reversed
Hudson, Judge**

Anoka County District Court
File No. 02-PR-13-365

Steven L. Theesfeld, Michelle D. Hurley, Kelly B. Micheletti, Yost & Baill, LLP, Minneapolis, Minnesota (for appellant Susan Hanowski)

Thomas Seelen, Rosenmeier Law Office, Little Falls, Minnesota (for respondent Cheryl Hanowski)

Considered and decided by Hudson, Presiding Judge; Cleary, Chief Judge; and Schellhas, Judge.

## UNPUBLISHED OPINION

**HUDSON**, Judge

In this probate appeal, appellant, the former wife of the decedent, challenges the district court's order requiring her to repay a family allowance previously ordered from the decedent's estate. Appellant argues that her later receipt of life-insurance proceeds was improperly set off against the family allowance. Because the district court erred by ordering repayment of appellant's previously received family allowance based on life-insurance proceeds that she subsequently received, we reverse.

# FACTS

In 2004, decedent Michael Hanowski purchased a life-insurance policy with a death benefit of $400,000. He named appellant Susan Hanowski, to whom he was then married, as primary beneficiary, with his three minor children as contingent beneficiaries. Michael and Susan's marriage was dissolved by stipulated judgment in 2005; the parties received joint physical and legal custody of their children, with Michael required to pay child support.[1] The dissolution judgment required each party to obtain or maintain life insurance, naming the other party as beneficiary, "in an amount not less than $200,000 until the parties are no longer obligated to provide familial support." It further provided that "[p]ayment of the death benefit to the appropriate beneficiary, as set forth above, shall relieve [Michael's] estate of any further obligation to pay child support." No maintenance was ordered, and both parties waived any right to future maintenance.

Michael then married respondent Cheryl Hanowski. In 2006, he executed a will, purporting to grant each of his children and Cheryl $100,000 under the existing life-insurance policy. Michael died in May 2013. At that time, only one of his children, who was then 15, remained a minor, and Michael was obligated to pay $213 per month in support for that child. When Michael's will was probated, both Susan and Cheryl petitioned for a family allowance from his estate. Susan submitted an affidavit alleging that based on the application of the child-support guidelines and the parties' incomes, she was entitled to $600 per month in child support. *See* Minn. Stat. §518A.39, subd. 4 (2014) ("Unless otherwise agreed in writing or expressly provided in [a support] order,

---

[1] For ease of reference, this opinion refers to the parties by their first names.

2

provisions for the support of a child are not terminated by the death of a parent obligated to support the child."). The district court initially ordered (a) family allowances of $600 per month for 18 months, beginning in June 2013, to Susan, based on her position as the mother of the minor child; and (b) $500 per month for 18 months to Cheryl as decedent's surviving spouse.

Before the estate was settled, the life insurer filed a related action for declaratory and interpleader relief concerning the proceeds of Michael's life-insurance policy. Susan and Cheryl filed cross-motions for summary judgment, each seeking the proceeds as a rightful policy beneficiary. The district court granted partial summary judgment in favor of Susan, concluding that she was entitled to at least $200,000 of the life-insurance proceeds on behalf of the minor child, as required by the dissolution judgment. The parties reached a stipulated settlement to divide the remaining life-insurance proceeds.

On behalf of the estate, Cheryl then moved for an order requiring Susan to repay the $9,600 family allowance that had been paid to Susan from the estate over a period of 16 months. She argued that payment of a portion of the life-insurance proceeds to Susan relieved Michael's estate of any additional obligation to pay child support and that Susan would be unjustly enriched by retaining the funds previously paid as a family allowance based on Susan's status as the mother of Michael's minor child. In response, Susan requested that Cheryl's family allowance be repaid on the ground that she had also received a portion of the life-insurance proceeds. The district court ordered repayment of Susan's family allowance, but not Cheryl's family allowance. The district court found that Susan's receipt of more than $200,000 in life-insurance proceeds decreased the

minor child's need for the previously paid family allowance, that Susan's receipt of both the family allowance and the insurance proceeds amounted to duplicative distributions for support of the child, and that the life-insurance proceeds she received likely exceeded Michael's remaining support obligation before the child emancipated. The district court, however, found that Cheryl's family-allowance award was distinguishable from Susan's because Cheryl "did not contract with [Michael] for support payments outside the probate assets." Susan appeals.

## D E C I S I O N

This court reviews the district court's order regarding a family allowance for an abuse of discretion, reviewing findings of fact for clear error. *In re Estate of Sullivan*, 724 N.W.2d 532, 533, 537 (Minn. App. 2006). But we independently examine issues of law, including whether the district court applied the correct legal standard in issuing its order. *Modrow v. JP Foodservice, Inc.*, 656 N.W.2d 389, 393 (Minn. 2003).

Minnesota law provides that a "decedent's surviving spouse and minor children whom the decedent was obligated to support, and children who were in fact being supported by the decedent, shall be allowed a reasonable family allowance in money out of the estate for their maintenance." Minn. Stat. § 524.2-404(a) (2014). This provision of the Minnesota Probate Code is derived from section 2-404 of the Uniform Probate Code (UPC). *See* Unif. Probate Code § 2-404 (2010 Rev. Art. II), 8 pt. I U.L.A. 201 (2013). Citing comments to the UPC, this court has held that "[i]n determining a reasonable amount of maintenance, the court should take into account the value of the estate, the previous standard of living, and the nature of other resources available to meet

4

current living expenses." *In re Estate of Cassius*, 392 N.W.2d 327, 329 (Minn. App. 1986) (citation omitted).[2] Need is relative to the circumstances, and what is reasonable is to be decided based on the facts of each case. *Id.* For instance, "[i]f the decedent has arranged for life insurance proceeds or a living trust to provide income during [the] period [of estate administration], that may be considered" in an order for a family allowance. *Id.*

Here, the district court properly awarded Susan a family allowance, based on her position as the mother of Michael's remaining minor child, whom Michael was obligated to support. *See Cassius*, 392 N.W.2d at 329. Michael's death, by itself, did not terminate his support obligation. *See* Minn. Stat. § 518A.39, subd. 4. In its second order, however, the district court ordered repayment of that allowance, finding that when Susan received the life-insurance proceeds, the estate was relieved of the duty to pay support in the form of a family allowance, and that by retaining the allowance previously paid, Susan would be receiving duplicative distributions for support of the minor child.

We conclude that the district court erred by ordering repayment of Susan's family allowance. "The family allowance is exempt from and has priority over all claims." Minn. Stat. § 524.2-404(d). Minnesota law has long recognized that the purpose of the family allowance is to provide support for the decedent's family during the period of

_____

[2] *Cassius* was decided under a former version of the Minnesota marital and family-allowance provisions, Minn. Stat. §§ 525.15(4), .151 (1984), which were revised in 1994, when the Minnesota legislature adopted portions of the UPC relating to the family allowance. *See* 1994 Minn. Laws ch. 472, §§ 33-34 (now codified as Minn. Stat. §§ 524.2-403-.2-404 (2014)). Although *Cassius* cites the comment to section 2-403 of the UPC, the current applicable reference is the comment to section 2-404. *See* Unif. Probate Code § 2-404.

probate administration. *Strauch v. Uhler*, 95 Minn. 304, 308, 104 N.W. 535, 536 (1905). "The [family-allowance statute] contemplates an immediate allowance for the support of the family of the deceased, without waiting for the final results of the necessarily deliberate processes of judicial determination by the probate court." *Id.*; *see also In re Estate of Rosenberger*, 495 N.W.2d 234, 236 (Minn. App. 1993) (noting that family-allowance statutes should be construed liberally because of their broad humanitarian purpose). And because a family allowance is a payment granted to the decedent's family for necessary expenses incurred during the period of estate administration, *Strauch*, 95 Minn. at 308, 104 N.W. at 536, we conclude, under the circumstances in this case, that it is not subject to repayment solely because the family later received life-insurance proceeds as a result of the decedent's death. This interpretation is also consistent with those of other jurisdictions that have adopted the family-allowance provisions of the UPC. *See, e.g.*, *In re Estate of Lawson*, 721 P.2d 760, 762 (Mont. 1986) (holding that family allowances are not subject to defenses such as offset); *Bell v. Estate of Bell*, 181 P.3d 708, 717 (N.M. App. 2008) (noting that "transfers outside of a will cannot offset or preclude the statutory allowances"); *see generally* Minn. Stat. § 645.22 (2014) (stating that courts construing uniform laws should do so "to effect their general purpose to make uniform the laws of those states which enact them").

When Susan was awarded a family allowance, she had sole legal and sole physical custody of Michael's minor child. It is undisputed that, during the period of estate administration, she had ongoing expenses for support of the child, and the record contains no evidence that other resources were then available to her from Michael's estate for that

support. This is not a situation in which "the decedent has arranged for life insurance proceeds . . . to provide income *during* [the] period [of estate administration]." *Cf. Cassius*, 392 N.W.2d at 329 (emphasis added). The district court properly declined to consider Susan's potential future receipt of insurance proceeds in making its initial grant of a family allowance. But it erred by concluding that, once those proceeds had been distributed, it could order repayment of the family allowance based on that distribution.

Cheryl maintains that under the terms of the parties' dissolution judgment, Michael's obligation to pay support from his estate was satisfied through the insurance policy he was required to maintain. *See* Minn. Stat. § 518A.39, subd. 4 (stating that provisions for child support are not terminated by a parent's death, absent an express provision in a support order or as "otherwise agreed in writing"). Cheryl points out that the district court distinguished her own family allowance from Susan's family allowance on the ground that Cheryl "did not contract with [Michael] for support payments outside the probate assets." We reject the district court's interpretation of the dissolution judgment regarding Michael's support obligation to Susan.

The dissolution judgment required Michael to maintain insurance in the amount of at least $200,000 while he was obligated to pay child support. But it also provided that "*[p]ayment* of the death benefit to the appropriate beneficiary . . . shall relieve [Michael's] estate of any *further* obligation to pay child support." (Emphasis added.) This language contemplates that a period of time could exist during which Michael's estate would remain obligated to pay child support. And it assumes the date of payment of the death benefit "to the appropriate beneficiary" as the end date for that child-support

7

obligation. Here, when the family allowance was ordered, the life-insurance proceeds had not yet been paid out. Ordering repayment of the previously granted family allowance after payment of the life-insurance death benefit would effectively rewrite this provision of the dissolution judgment to terminate Michael's support obligation as of the date of death, rather than the date of payment of insurance benefits.

Cheryl also argues that by the terms of the dissolution judgment, Susan waived a family allowance. We disagree. "[W]aiver is the intentional relinquishment of a known right." *Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 367 (Minn. 2009) (quotations omitted). The dissolution judgment contains no language waiving the right to a family allowance in the event of Michael's death, and the record contains no evidence that Susan intended to make such a waiver.

Cheryl maintains that, once Susan had received life-insurance proceeds, the district court was permitted to amend its order to order repayment of the family allowance. But the district court's second order did not merely amend the previous order; it essentially reversed the determination that Susan was entitled to a family allowance. As Susan argues, the relevant statute provides no authority for the district court to reverse its previous determination of a family allowance based on later-acquired assets. *See* Minn. Stat. § 524.2-404. By the time of the second order, it may be presumed that Susan had spent the funds that she had been receiving for over one year as a family allowance for the support of the minor child. *Cf. Rogers v. Rogers*, 622 N.W.2d 813, 815 (Minn. 2001) (noting the "general[]" presumption that a sole physical custodian "will spend the appropriate amount on the children"). This is an appropriate use of the family allowance,

8

and we conclude that requiring the mother of decedent's child to repay funds received and presumably spent in good faith for family support is inconsistent with the humanitarian purposes of family allowances and inconsistent with Minnesota case law. *See Rosenberger*, 495 N.W.2d at 236.

**Reversed.**