In re James SCHUETTE, Debtor.

Bankruptcy No. 4–85–1683.

United States Bankruptcy Court,
D. Minnesota.

March 5, 1986.

James Schuette, pro se.

C. Stephen Rowley, Redwood Falls, Minn., for debtor.

Michael A. Fahey, of Nicklaus & Fahey, Chaska, Minn., for State Bank of Young America.

## ORDER

MARGARET A. MAHONEY, Bankruptcy Judge.

The above entitled matter came on for hearing on the motion of secured creditor State Bank of Young America objecting to: (1) debtor's claimed exemption of $10,000 of farming equipment under Minn.Stat. Ann. § 550.37, subd. 5 (West Supp.1986); and (2) debtor's claimed exemption of patronage funds due from Bongards Creamery Association with an estimated value of $37,000—$48,204.43 as an employee benefit exempt under Minn.Stat.Ann. § 550.37, subd. 24 (West Supp.1986).

This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334 and § 157. This is a core proceeding pursuant to § 157(b)(2)(B).

Based upon the evidence adduced at the hearing, I am denying the debtor's claimed exemption under § 550.37 subd. 24 and am denying, in part, debtor's claimed exemption under § 550.37 subd. 5.

## FACTS

1. Debtor James Schuette filed a chapter 7 voluntary petition for bankruptcy on August 8, 1985.

2. State Bank of Young America was listed as a secured creditor in the amount of $70,315.19 on debtor's schedule of creditors.

3. State Bank of Young America's loan to debtor was secured by a security interest in: (1) all equipment of debtor, whether now owned or hereafter acquired; (2) all farm products of debtor, whether now owned or hereafter acquired; (3) patronage refunds due debtor by Bongards Creamery Association; and (4) other collateral not here at issue.

4. State Bank of Young America's security interest was perfected through a security agreement signed by the debtor and dated October 7, 1983; and a financing statement filed October 10, 1983.

5. Debtor listed various farm implements on schedule B–2 with an estimated aggregate value of $48,775.00, but failed to estimate the value for each item separately.

6. Debtor claimed $10,000 of the farm machinery listed on schedule B–2 as exempt property under Minn.Stat.Ann. § 550.37, subd. 5 (West Supp.1986), without specifying which farm machinery was to be exempted.

7. Debtor also claimed the patronage refunds due from Bongards Creamery Association with an estimated value of $48,-204.43 as an employee benefit exempt under Minn.Stat.Ann. § 550.37, subd. 24 (West Supp.1986).

8. Debtor, James Schuette is currently attending classes in over the road trucking at a vocational technical institute. Classes started in January and run approximately seven and one half months.

9. Debtor, in the past, was a dairy farmer. Debtor is not currently performing farming operations or dairy operations, but has done some crop farming in the past in conjunction with his dairy operation. He

has expressed a desire to crop farm in the future on land that is pledged as security for a loan which is in default, but which has not been foreclosed upon. He has sold his dairy herd and does not intend to operate a dairy farm in the future.

10. At the time the creditor, State Bank of Young America, perfected its security interest in debtor's property the total amount of property exempt under Minn. Stat.Ann. § 550.37, subds. 5 and 6 was limited to $5,000 by subd. 7.

11. Debtor belonged to the Bongards Creameries Cooperative. The Coop is owned by the farmers and all members buy stock. Each member farmer sells his milk to the Coop.

12. At Bongards' year end, the net revenue of the cooperative is determined. This revenue is then divided proportionally among the cooperative members based on the amount of milk each farmer sold through Bongards. The net revenue shares are credited to the farmer-members' equity accounts.

13. The management of the cooperative determines how many years net revenue shares must be retained in member equity accounts. Bongards is presently requiring retention of seven years of equity. This protects against deficits at the cooperative.

14. James Schuette has approximately $37,000–$48,804.43 in his equity account. The evidence did not clearly establish the amount. Approximately $3,700 was released in February, 1986 by Bongards and was applied to Schuette's debt to the Bank.

15. James Schuette is unsure if he is an employee of Bongards. He does not receive a yearly W–2 wage information form from Bongards. He has in the past gotten "some form about dividends." [1]

## DISCUSSION
### M.S.A. § 550.37, Subd. 5

Creditor, State Bank of Young America, alleges that the debtor is not entitled to the

exemption for farm equipment under Minn. Stat.Ann. § 550.37, subd. 5 (West Supp. 1986), because the debtor is not currently performing farming operations. Section 550.37, subd. 5, states that "[f]arm machines and implements used in farming operations by a debtor engaged principally in farming, livestock, farm produce, and standing crops, not exceeding $10,000 in value," is not liable to attachment, garnishment, or sale on any final process, issued from any court.

The Supreme Court of Minnesota has addressed the issue of whether a debtor who had been engaged in the trade of butcher had lost his exemption for tools of the trade because he had leased his tools out for a period of two years. The Court stated that the debtor completely waived his right to the exemption, because the lease agreement "wholly disabled himself for at least two years from resuming his trade." The Court went on to add, however, that "of course the temporary abandonment of one's occupation will not result in a loss of the right of exemption, when coupled with an intention to resume the same as circumstances will permit." *Cable v. Hoolihan,* 98 Minn. 143, 145, 107 N.W. 967 (1906).

In the case now before this court the debtor was engaged in dairy farming, and some crop farming. The debtor has abandoned any intention of resuming dairy farming, but has expressed an intention to resume crop farming on land still in his possession. The mere fact that the debtor is currently attending classes at a vocational technical institute does not negate his intention to resume farming as circumstances permit.

The debtor, although claiming the exemption of farming equipment under Minn.Stat.Ann. § 550.37, subd. 5 (West Supp.1986) must rely on 11 U.S.C. § 522(f)(2)(B) in order to avoid the liens held by creditor State Bank of Young

1. It is important to note that Schuette's amended B–3 and B–4 Schedules themselves term the Bongards Creameries monies as "dividends 1977–1984."

America.[2] Therefore, the various federal court opinions interpreting the term farmer in order to determine whether a claimed lien on farm implements can be avoided under 11 U.S.C. § 522(f)(2)(B) on an implement or tool of the trade, become crucial.

The term farmer is defined in 11 U.S.C. § 101(17) to mean:

> person that received more than 80 percent of such person's gross income during the taxable year of such person immediately preceding the taxable year of such person during which the case under this title concerning such person was commenced from a farming operation owned or operated by such person.

However, it is relatively well settled that the definition of farmer located in 11 U.S.C. § 101(17) is conclusive only where farmer is specifically mentioned in another section of the code. *See Flick v. United States ex rel Farmers Home Administration,* 47 B.R. 440 (Bktcy.W.D.Pa.1985); *Middleton v. Farmers State Bank of Fosston (In re Middleton ),* 45 B.R. 744 (Bktcy.D.Minn. 1985); *In re LaFond,* 45 B.R. 194 (Bktcy.D. Minn.1984); and *Yoder v. U.S. (In re Yoder ),* 32 B.R. 777 (Bktcy.W.D.Pa.1983). *But see, Central Nat'l Bank and Trust Co. v. Liming (In re Liming ),* 22 B.R. 740 (Bktcy.W.D.Okla.1982); and *Holman v. F.H.A. (In re Holman ),* 26 B.R. 110 (Bktcy.M.D.Tenn.1983).

Section 522(f) refers to a debtor, not a farmer, therefore, the definition of farmer found in 11 U.S.C. § 101(17) should not be determinative for the purpose of avoiding a lien under § 522(f)(2)(B).

■ There is little doubt that the debtor was a farmer for some time prior to his filing of the bankruptcy petition on August 8, 1985, and the great weight of authority points out: (1) that the "temporary abate-

ment of work in the trade may not be fatal to the claimed exemption for tools of the trade," *Flick, supra,* 47 B.R. at 443; and (2) that the "abandonment of a trade requires an intentional abandonment," *Thorp Credit and Thrift Co. v. Pommerer (In re Pommerer ),* 10 B.R. 935, 942 (Bktcy.D. Minn.1981); *Cable, supra,* 98 Minn. 143, 107 N.W. 967. The debtor has evidenced a clear intention to resume farming operations and has demonstrated that his hiatus in farming is but temporary. The court finds that defendants are farmers for the purpose of his claimed exemption under Minn.Stat.Ann. § 550.37, subd. 5 (West Supp.1986) and for the purpose of avoiding the creditor's lien under 11 U.S.C. § 522(f)(2)(B).

## II.

■ The creditor State Bank of Young America, in the alternative, contends that if the debtor is entitled to the exemption under Minn.Stat.Ann. § 550.37, subd. 5 (West Supp.1986), then the debtor should be limited to the $5,000 exemption that the statute provided for in 1983 when the secured interest was perfected. The creditor claims that the $10,000 exemption that the statute now provides after a 1985 amendment should not be given retroactive application.

Proper resolution of this issue requires a three-step process of analysis. First, this Court must determine whether allowing the debtor the $10,000 exemption would be a retroactive application of the 1985 amendment to § 550.37, subd. 5. Secondly, if this Court does find that the application of the $10,000 exemption to the debtor would be retroactive, the Court must go on to determine if the statute was intended by the legislature to be applied retroactively. Fi-

---

**2.** Debtor did not move for lien avoidance pursuant to 11 U.S.C. § 522(f)(2)(B) prior to the hearing. However, for his exemption to have any value in this case, this motion must be made. Debtor's counsel did not appear with him at the hearing and I am unsure if he still represents the Debtor. I am considering Debtor's defense to the Bank's motion to be an affirmative motion for lien avoidance too since this issue was impliedly tried by the parties. Federal Rule of Civil Procedure 15(b). Although under the Bankruptcy Rules, F.R.C.P. 15 is only applicable in adversary proceedings, I find that in this case of a pro se debtor his testimony was sufficient to raise the issue. The notice to creditors of the exemption issue was sufficient notice of the lien avoidance issue also.

nally, if the statute was intended to be applied retroactively, then the Court must then go on to determine if the retroactive application by a federal court for the purpose of avoiding a lien under 11 U.S.C. § 522(f) would deprive the secured creditor of a property interest without just compensation in violation of that creditor's Constitutional rights.

When a security agreement is consummated by a debtor and a secured creditor, the creditor's rights vis-a-vis the debtor become vested. It is only reasonable to presume that the parties bargained with the knowledge of the law as it then existed. The validity of a contract [and by analogy also the rights of the parties under the contract] is governed by the law in force at the time the parties entered into the contract. *Olson v. Nelson,* 3 Minn. 53 (1859). When the creditor State Bank of Young America and the debtor James Schuette bargained in 1983 they did so with that knowledge that a farmer could exempt only $5,000 worth of farm implements under Minn.Stat.Ann. § 550.37, subd. 5 (West Supp.1985). To apply the 1985 amendment to section 550.37, subd. 5, which increased the exemption from $5,000 to $10,000 would retroactively alter property rights vested in 1983.

The Minnesota State Legislature has determined that "no law shall be construed to be retroactive unless clearly and manifestly so intended by the legislature." Minn.Stat. Ann. § 645.21 (West 1975). Therefore, because the Minnesota State Legislature did not manifest any intention that the increased exemption should be applied retroactively this Court will not construe the change in Section 550.37, subd. 5 to apply retroactively to the debtor in this case.

In addition, because the amendment to Section 550.37, subd. 5, is held to not apply retroactively, then the third step of analysis mentioned above becomes unnecessary and the Court is not required to decide the constitutional issue.

### M.S.A. 550.37 Subd. 24

As amended in 1985, M.S.A. § 550.37 subd. 24 defines the employee benefits of a debtor which are exempt as follows:

Subd. 24. EMPLOYEE BENEFITS. The debtor's right to receive present or future payments, or payments received by the debtor, under a stock bonus, pension, profit sharing, annuity, individual retirement account, individual retirement annuity, simplified employee pension, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor."

It is the burden of the creditor to prove that the exemption is not properly claimed. Bankruptcy Rule 4003(c).

State Bank of Young America established that Schuette owns an equity account at Bongards. The payment of $3,700 in February 1986 to the debtor representing his seven year old equity balance and the fact that the equity accounts are retained for deficit purposes only showed that the accounts are not payable "on account of illness, disability, death or age."

Schuette claimed that the Bongards monies are exempt under state law exemptions. However, Minnesota does not independently define stock bonus, pension, profit sharing, annuity, individual retirement account, individual retirement annuity or simplified employee pension plans. Therefore, the federal definitions of those terms must necessarily be used in interpretation of M.S.A. § 550.37, Subd. 24.

Stock bonus, pension, profit sharing, annuity, individual retirement account, individual retirement annuity or simplified employee pensions as established under federal law require wages to be earned to allow plan contributions by an employer and/or employee and/or self employed person (except in the case of certain nonemployed spouses). 29 U.S.C. § 1002(2)(A); *Commercial Mtge. Ins. Inc. v. Citizens Nat'l Bank of Dallas,* 526 F.Supp. 510 (D.C.Tex. 1981) (as to profit sharing and pension plans); 26 U.S.C. § 408(k) (as to simplified employee pension plans); 26 U.S.C. § 408(a) (as to individual retirement annui-

ties); 29 U.S.C. § 1107(d)(6) (as to stock bonus plans). A plan which holds monies of members in order to prevent budget shortfalls is not an employee benefit plan as the United States Code would define it. There are no contributions made to Bongards based upon wages. The evidence showed that Schuette was not an employee of Bongards. He received no wages for which he would get a W–2 form for tax purposes.

Finally, the Bank has the burden of proving that the monies, even if they are pension monies, are not reasonably necessary to Schuette's support. Bankruptcy Rule 4003(c). *In re Bari*, 43 B.R. 253 (Bktcy. Minn.1984). The Bank proved that Schuette is taking over-the-road truck driving training which will be completed by late summer 1986. Schuette testified that he intends to crop farm again. These activities should produce income. Schuette produced no evidence that the Bongards monies were needed for present or future support. Accordingly, I find that Schuette will be able to support himself without the Bongards monies.

Therefore, I find that the Bongards Creameries dividends are not exempt under M.S.A. § 550.37 Subd. 24 because they do not fit any category of exemptible employee benefits and because they are not reasonably necessary for Schuette's support.

ACCORDINGLY, IT IS HEREBY ORDERED that:

1. The objection of State Bank of Young America to the claimed exemption of James Schuette's farm equipment is denied to the extent that the debtor James Schuette is entitled to exempt $5,000 worth of farm equipment upon filing an amended itemized B–4 Schedule and to avoid the lien of the State Bank of Young America as to the scheduled items.

2. The objection of State Bank of Young America to the exemption of the Bongards Creameries patronage dividends is sustained.