**WESTINGHOUSE CREDIT CORPORATION, judgment creditor, Respondent,**

v.

**J. REITER SALES, INC., et al., Judgment Debtors,**

**R. John Falck, judgment debtor, Appellant.**

No. C5–88–2618.

Court of Appeals of Minnesota.

Aug. 8, 1989.

Justin H. Perl, Susan E. Oliphant, Maslon Edelman Borman & Brand, Minneapolis, for respondent.

John M. Mulligan, Mulligan & Bjornnes, Minneapolis, for appellant.

Heard, considered and decided by FORSBERG, P.J., and FOLEY and SHORT, JJ.

## OPINION

FOLEY, Judge.

Respondent Westinghouse Credit Corporation obtained judgment against appellant R. John Falck and others in the amount of $92,334.34, plus interest. Following a motion by Westinghouse to obtain an assignment of rights to Falck's deferred compensation plan and two additional retirement plans, the trial court ruled that only Falck's interest in the deferred compensation plan was subject to assignment. We affirm.

## FACTS

On November 15, 1983, Westinghouse and J. Reiter Sales, Inc. entered into a security agreement under which Westinghouse agreed to advance funds to Reiter so that Reiter could purchase inventory for its business. The advance of the funds was to be secured by a continuing security interest in Reiter's inventory. As further security on the loan, Westinghouse obtained guaranty agreements from the principals of Reiter, including Falck.

Reiter failed and was in default on its obligations under the agreement. Falck also failed to perform his obligations under the guaranty. Westinghouse was awarded a judgment of $92,334.34, plus interest.

Falck is a general insurance agent for five to ten insurance companies, including Lutheran Brotherhood Fraternal Benefit Society. He is employed by R.J.F., Falck's general insurance agency, which has a franchise to sell Lutheran Brotherhood insurance. Falck is not an employee of Lutheran Brotherhood and has independent contractor status. As a result of his relationship with Lutheran Brotherhood, Falck possessed certain unfunded and unqualified deferred compensation benefits as well as other funded non-employee benefits including a Field Retirement Plan Fixed Dollar Fund and a Field Retirement Plan Equities Fund.

Steven Bakk, the Assistant Vice President in charge of Compensation Benefits for Lutheran Brotherhood, testified in a deposition that the Internal Revenue Service audited Lutheran Brotherhood's plans in 1979 and determined that general agents of Lutheran Brotherhood were not employees and could not participate in the qualified plans. He also testified that the deferred compensation plan is both an unqualified and unfunded plan and is not governed by ERISA, 29 U.S.C.A. § 1002 (West 1985). Lutheran Brotherhood has complied with the audit and has refused to fund any retirement accounts of its general agents.

As of September 1, 1987, Falck's unfunded benefits totaled $141,991.66. However, there is no actual money in the plan. Bakk testified that the deferred compensation plan is "just an accounting entry." Falck

is paid on a commission basis and the contributions to the plan are tied in with the payment system. Each time Falck is paid, the computer, for accounting purposes only, reflects a contribution to that plan. No money is actually taken or funded into a particular trust fund.

Falck's remaining retirement plans were funded prior to the IRS audit. The Field Retirement Plan Fixed Dollar Fund contained $213,878.01 and the Field Retirement Plan Equities Fund contained $110,-395.79.

The trial court ordered that Falck's right and title to and interest in the deferred compensation plan be assigned to Westinghouse. The trial court denied assignment of the two remaining retirement funds.

## ISSUES

1. Did the trial court err in determining that an unqualified and unfunded deferred compensation plan is not exempt from attachment under Minn.Stat. § 550.37, subd. 24?

2. Was the assignment to the creditor of the entire amount of the deferred compensation plan proper to satisfy the judgment?

## ANALYSIS

The issues presented on this appeal are legal issues, and this court needs to accord no deference to the trial court's determination on a question of law. *A.J. Chromy Construction Co. v. Commercial Mechanical Services, Inc.*, 260 N.W.2d 579, 582 (Minn.1977).

1. Under Minnesota law, a debtor's property is subject to attachment unless a specific exemption applies. Minn.

Stat. § 550.37, subd. 24 (1986) exempts certain employee benefits:[1]

The debtor's right to receive present or future payments, or payments received by the debtor, under a stock bonus, pension, profit sharing, annuity, individual retirement account, individual retirement annuity, simplified employee pension, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor.

Benefits which are exempt under subdivision 24 are those derived from an employment relationship or from self-employment endeavors. *In re Raymond*, 71 B.R. 628, 630 (Bankr.D.Minn.1987).

Falck's deferred compensation plan does relate to his self-employment endeavors. The purpose of this plan is to provide retirement income for self-employed general agents.

To be exempt from attachment, the payments must be received by the debtor under a stock bonus, pension, profit sharing, annuity, simplified employee pension, *or similar plan or contract.* Falck argues that the deferred compensation plan is similar in nature to the other types of pension plans listed in subdivision 24 and should be considered exempt.

Keogh plans, although not specifically listed in subdivision 24, have been found to be exempt assets. *In re Schlee*, 60 B.R. 524, 528 (Bankr.D.Minn.1986). There, the debtor, a self-employed individual, made contributions to the plans in the 1960's and 1970's.

Keogh plans are similar to the listed pension plans in M.S.A. § 550.37 subd. 24. They all must meet very similar criteria to be tax exempt. I see no rea-

---

1. An amendment to this section in 1988 deleted the language limiting the exemption to the property "reasonably necessary for the support of the debtor and any dependent of the debtor." 1988 Minn.Laws ch. 490, § 4. This amendment subsequently was declared unconstitutional in *In re Netz,* 91 B.R. 503, 505 (Bankr.D.Minn. 1988), where the court held: "As it now stands, the statute violates MINN.CONST. Art. 1, § 12, which provides that '[a] reasonable amount of property shall be exempt from seizure or sale for the payment of any debt or liability.'" As a general rule, an unconstitutional amendment has no effect and leaves the statute as it was before the amendment. *Bongard v. Bongard,* 342 N.W.2d 156, 159 (Minn.Ct.App.1983).

son the federal exemption statute or the present or past Minnesota statute would exclude Keogh plans. All of the plans provide retirement income and are established under the Internal Revenue Code restrictions on contributions, vesting, and distribution.

*Id.* at 527. There was no dispute in *Schlee* that the Keogh plans were valid tax exempt plans as defined by federal law. *Id.* at 525.

The Internal Revenue Code requires that the money be set aside in a trust or custodial account which is separate from the entity establishing the plan. The funds thus are unavailable to the employer. *See* 26 U.S.C.A. §§ 401–409 (West 1988). Here, the funds in the deferred compensation plan remain with Lutheran Brotherhood and are available for its use, which is contrary to the Internal Revenue Code requirements for exempt benefit plans. Steven Bakk, the Assistant Vice President for Compensation Benefits at Lutheran Brotherhood testified that the money in the deferred compensation plan was not actually placed in a particular trust fund.

A  [Bakk] It's just an accounting entry. It's an unfunded plan. He's paid on a commission basis and, hence, his earnings are volatile. And, so, the contribution, the computer system is tied in with the actual payment system to zero in exactly on what he was paid that particular pay period.

Q  So each time he is paid, the computer for accounting purposes only, reflects that in his deferred compensation balance? Is that correct?

A  That's correct.

Q  But the money is not actually taken or funded into a particular trust fund?

A  That's correct.

Q  In fact, it's not taken anywhere, it doesn't even exist except for accounting purposes * * *.

A  That's correct.

   \*      \*      \*      \*      \*      \*

Q  With respect to the deferred compensation that is accounted for, does it earn any interest * * *?

A  We credit the accounts with a rate of interest that's determined by Lutheran Brotherhood each year. Here again, it's merely an accounting entry since it's not a funded plan.

As we understand this matter, judgment creditors of Lutheran Brotherhood could attach this plan.

Other plans where money has not been placed in a separate fund have been held not to be employee benefit plans as defined under federal law. In *In re Schuette*, 58 B.R. 417 (Bankr.D.Minn.1986), the debtor claimed an exemption under subdivision 24 for dividends received from an equity account he owned at a cooperative association. No contributions were made to the company based upon wages. The court held that a "plan which holds monies of members in order to prevent budget shortfalls is not an employee benefit plan as the United States Code would define it." *Id.* at 422.

■ We conclude the trial court was correct in determining that the deferred compensation plan is not an exempt asset because it is not sufficiently similar to those exempt benefits which are enumerated in the statute. Essentially, this plan is an unsecured promise from Lutheran Brotherhood that funds may be available to Falck in monthly installments upon his retirement as a general agent.

Finally, the deferred compensation plan is not reasonably necessary to Falck's support. The reasonably necessary standard in the exemption statute requires that the court take into account other income and exempt property of the debtor, present and anticipated. The amount to be set aside should be sufficient to " 'sustain basic needs not related to [the debtor's] former status in society or the life style to which he is accustomed.' " *In re Bari*, 43 B.R. 253, 255–56 (Bankr.D.Minn.1984) (quoting *In re Taff*, 10 B.R. 101, 107 (Bankr.D.Conn. 1981)).

Here, the trial court determined that Falck's Field Retirement Fixed Dollar and Equities Fund plans totaling $324,273.80 as of September 1, 1987 were exempt from attachment. In addition, Falck owns two IRA's and four Keogh plans. It was reasonable for the trial court to conclude that the basic retirement needs of Falck and his wife would be met.

2. Falck also argues that the trial court erred in assigning all of the deferred compensation plan to the creditor when the amount in the plan was greater than the amount of the judgment. The judgment was in the amount of $92,334.34 plus interest; the value of the deferred compensation plan was $141,991.

■ The trial court correctly assigned the entire amount of the plan to Westinghouse. Westinghouse will receive nothing from the plan until Falck retires. Furthermore, the creditor cannot collect more than the amount of the judgment plus interest at the time the debt is paid.

### DECISION

Affirmed.

SHORT, Judge (dissenting).

I respectfully dissent. Essentially the retirement plan at issue is a promise from Lutheran Brotherhood to pay Falck in monthly installments upon his retirement. Like many promises to pay, it is unsecured. That fact makes no legal difference, however, because the statute does not distinguish between secured and unsecured promises to pay. Minn.Stat. § 550.37, subd. 24 (1986) exempts the "right to receive * * * future payments * * * under a * * * pension * * * or similar plan. * * * *" The plan at issue (1) is available to Falck only because of his status as a self-employed agent of Lutheran Brotherhood, and (2) is based on Falck's compensation and commissions throughout his tenure with Lutheran Brotherhood. The plan thus meets the test for inclusion in the list of property exempt from creditor attachment under Minn.Stat. § 550.37, subd. 24. *See In Re Raymond,* 71 B.R. 628, 630 (Bankr. D.Minn.1987); *In Re Schuette,* 58 B.R. 417, 421–22 (Bankr.D.Minn.1986). The fact that the retirement plan is unfunded does not matter for purposes of the issue before us.

Moreover, this result is consistent with the legislative intent to protect retirement benefits. Denying the legislature's intended protection to unfunded pension plans is contrary to the purpose of the statute. The treatment afforded such plans by the tax laws is irrelevant.

I agree with the majority that the statutory exemption is available only to the extent that the pension monies are reasonably necessary for the support of Falck and his dependents. *See* Minn.Stat. § 550.37, subd. 24. However, the trial court's "hunch" that Falck had sufficient other retirement assets to provide for his "basic" needs is not based on the evidence. In addition, there has been no showing that Falck acquired the asset for the purpose of defrauding his creditors. *See In re Johnson,* 80 B.R. 953, 958 (Bankr.D.Minn.1987). Under these circumstances, I conclude that the plan is exempt under Minn.Stat. § 550.37, subd. 24 and that the creditor cannot collect its judgment against the plan.